IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:12-CV-78-BO

| | |
|---|---|
| RICHARD LUCAS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | O R D E R |

This matter is before the Court on the parties' cross-motions for judgment on the pleadings. [DE 24 & 27]. A hearing on this matter was held in Raleigh, North Carolina on February 7, 2013 at 3:00 p.m. For the reasons discussed below, plaintiff's motion is GRANTED, defendant's motion is DENIED, and, accordingly, the judgment of the Administrative Law Judge is REVERSED.

## BACKGROUND

Plaintiff protectively filed for disability insurance benefits on November 29, 2007. He alleged a disability onset date of March 27, 2002. The claimant's application was denied initially and upon reconsideration. The plaintiff then requested an administrative hearing and one was held on May 18, 2010. On June 25, 2010 the presiding Administrative Law Judge (ALJ) issued his opinion that the plaintiff was not disabled. On October 26, 2011, the Appeals Council denied the claimant's request for review rendering the ALJ's decision the final decision of the Commissioner. The plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

1

## MEDICAL HISTORY

During an eight-year period the plaintiff suffered six myocardial infarctions and multiple stent implantations. On December 4, 2002, the plaintiff went to New Hanover Regional Medical Center complaining of angina symptoms that had occurred on and off for two weeks and which he was treating with aspirin. [Tr. 313]. At that time, the plaintiff was diagnosed with an acute inferior wall myocardial infarction and underwent stent replacement. [Tr. 298]. The procedure resulted in no complications and Mr. Lucas was released two days later. However, the plaintiff's physician opined that he had not consistently attended his follow up appointments since his last myocardial infarction in January, 2000, he continued to smoke two packs of cigarettes a day, and he had stopped taking his Lipitor after he ran out of the medication. [Tr. 313].

In January, 2004, the plaintiff was again diagnosed with acute myocardial infarction and had two stents implanted. [Tr. 300]. Again, plaintiff had no complications and was released three days later. Plaintiff attended three follow-up appointments – one for his diabetes and two cardiology follow ups. Plaintiff denied chest pain and other symptoms associated with coronary artery disease at his cardiology appointments. The plaintiff had episodes of chest pain, but did not have any other myocardial infarctions until September, 2007 when he underwent another stent implantation following an abnormal cardiac catheterization. Although plaintiff had some gaps in treatment and was not always compliant with his doctors' prescriptions there is evidence throughout the record that he lacked the resources to do so.

## DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g);

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984)(quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's residual functional capacity ("RFC") is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Here, the ALJ erred at step three by failing to consider whether the plaintiff met listing 4.04A. That listing requires that the claimant demonstrate at least one of the following symptoms manifesting at a workload equivalent to 5METs or less:

1. Horizontal or downsloping depression, in the absence of digitalis glycoside treatment or hypokalemia, of the ST segment of at least -0.10 millivolts (-1.0 mm) in at least 3 consecutive complexes that are on a level baseline in any lead other than a VR, and depression of at least -0.10 millivolts lasting for at least 1 minute of recovery; or
2. At least 0.1 millivolt (1mm) ST elevation above resting baseline in non-infarct leads during both exercise and 1 or more minutes of recovery;
3. Decrease of 10 mm Hg or more in systolic pressure below the baseline blood pressure or the preceding systolic pressure measured during exercise (see 4.00E9e) due to left ventricular dysfunction, despite an increase in workload; or
4. Documented ischemia at an exercise level equivalent to 5 METs or less on appropriate medically acceptable imaging, such as radionuclide perfusion scans or stress echocardiography.

20 C.F.R. Part 404, Supt. P, Appx. 1 4.04A

The plaintiff's stress test is well-documented in the record. According to the results of this test the plaintiff met the listing in two different ways: (1) his systolic blood pressure dropped more than 10 mm Hg despite increased exertion and (2) the leads reflected downsloping depression of the ST segment of at least -.10 millivolts. The defendant argued that the defendant's stress test – a Myoview – could not be considered as it was not an "exercise test" as required by the listing. This is simply not true. Myoview is a brand name for a radiopharmaceutical developed by General Electric that is used to delineate regions of ischemia and the presence of infarcted myocardium.[1] In other words, it is an imaging tool, but does not induce stress – a treadmill or other exercise is used to work the heart. This procedure may be called a radionuclide perfusion scan – a type of exercise tolerance test (or stress test) that is expressly condoned by the listings. Listing 4.00C. As such, Mr. Lucas meets the listing and is entitled to benefits.

---

[1] *See* Myoview – GE Healthcare – Medical Diagnostics, md.gehealthcare.com/pifiles/Myoview.pdf, *accessed on 8/15/2013*.

4

The defendant also argued that the plaintiff has failed to establish that the duration of his condition was greater than 12 months. The record shows a history of acute myocardial infarctions for many years beginning with a heart attack in 1999. This history of heart attacks, stent implantations, and reclogging of claimant's arteries is sufficient to satisfy this durational requirement.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings is GRANTED, and the decision of the Commissioner is REVERSED. The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one which "lies within the sound discretion of the district court." *Edwards v. Bowen*, 672 F.Supp. 230, 236 (E.D.N.C. 1987). Accordingly, this case is REMANDED for an award of benefits.

SO ORDERED.

This 20 day of August, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE